IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

NOAH T. MARTIN,

    Defendant.

Case No. 2:16-20025-JAR-1

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Noah T. Martin's Motion for Compassionate Release (Doc. 55) under section 3582(c) of the First Step Act ("FSA"). Martin seeks release on grounds that the COVID-19 virus presents a serious risk to his health. For the reasons set forth in detail below, the Court concludes that Martin has not made a sufficient showing of extraordinary and compelling reasons to grant a sentence reduction under § 3582(c) and denies his motion.

**I.  Background**

On June 13, 2017, Martin pleaded guilty before Judge Carlos Murguia to two counts of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) pursuant to a Fed. R. Crim. P. Rule 11(c)(1)(C) plea agreement.[1] Martin was sentenced to two terms of 97 months' imprisonment, to be served concurrently, and two ten-year terms of supervised release, also to be served concurrently.[2]

---

[1] Doc. 38. This case was reassigned to Chief District Judge Julie A. Robinson on June 3, 2020. Doc. 57.
[2] Doc. 45.

1

Martin currently is serving his sentence at Federal Correction Institution ("FCI") Texarkana in Texas. He is thirty-four years old and his projected release date from the Bureau of Prisons ("BOP") is April 29, 2024. As of August 4, 2020, the BOP reports that FCI Texarkana has two confirmed cases of COVID-19 among inmates.[3] The BOP further reports that 197 tests have been completed and seven tests are pending.

On June 1, 2020, Martin filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In support of his motion, Martin states that he was born with a collapsed lung and believes he has a "compromised respiratory system."[4] He also states that he has a "family history of heart disease," which has required both of his biological parents to undergo "serious heart procedures."[5] Martin requests the Court reduce his term of imprisonment to time served. With his motion, Martin includes a detailed release plan including residing with either his father and stepmother in Lawrence, Kansas or his mother and stepfather in Gravois Mills, Missouri. Martin has indicated he has two different employment options in Lawrence, Kansas. He plans to work either for his brother doing clerical work and manual labor or working for his former psychiatrist's office.

Under Standing Order 19-1, the Federal Public Defender ("FPD") has been appointed to represent indigent defendants who may qualify to seek compassionate release under section 603(b) of the First Step Act. That Order was supplemented by Administrative Order 20-8, which established procedures to address motions brought on grounds related to the COVID-19 pandemic. Under that Order, the FPD must notify the Court within fifteen days of filing of any

---

[3] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last accessed August 04, 2020).

[4] Doc. 55 at 7–8.

[5] *Id.* at 7.

*pro se* compassionate release motion whether it intends to enter an appearance on behalf of the defendant or seek additional time to make such a determination. The FPD has declined to enter an appearance, and the time for doing so has expired. Accordingly, Martin's motion proceeds *pro se*.

## II.     Legal Standards

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[6] Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply. Until recently, these exceptions required the BOP to move on a defendant's behalf. In 2018, however, the FSA modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[7] Since then, a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[8] Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[9]

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant

---

[6] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[7] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[8] 18 U.S.C. § 3582(c)(1)(A).

[9] *United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence).

such a reduction"; or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[10]  In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[11]

The FSA does not itself define what constitutes "extraordinary and compelling reasons" to justify a reduction in sentence.  28 U.S.C. § 994(t) provides that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(a)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criterial to be applied and a list of specific examples."  That policy statement is found at U.S.S.G. § 1B1.13.

The Sentencing Commission's comments to § 1B1.13 set forth four circumstances under which extraordinary and compelling reasons may exist: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental

---

[10] 18 U.S.C. § 3582(c)(1)(A).

[11] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

4

health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; and (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner.[12]  The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19.  The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the Centers for Disease Control and Prevention ("CDC") should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.[13]

Martin does not meet the qualifications for compassionate release based on his age, family circumstances, or qualifying medical conditions.  His only path to relief would be under subdivision (D),  the so-called "catchall" provision included in § 1B1.13, which provides that extraordinary and compelling reasons "other than, or in combination with," the four listed may be sufficient to warrant relief, as determined by the Director of the BOP.[14]  The BOP has published a Program Statement identifying "several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist:  the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"[15]  As a "permissible construction of the statute," the BOP's Program Statement is "entitled to some deference."[16]

---

[12] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A) through (C) (U.S. Sentencing Comm'n 2018).

[13] *See, e.g., United States v. Martin*, No. DKC 04-0235-5, 2020 WL 3447760, at *2 (D. Md. June 24, 2020); *see also* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[14] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A) through (C) (U.S. Sentencing Comm'n 2018).

[15] *United States v. Saldana*, ---F. App'x---, 2020 WL 1486892, at *2 (quoting BOP Program Statement 5050.50 at 12 (2019)).

[16] *Id.* at *3 (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).

On its face, the catchall category applies only if the Director of the BOP seeks compassionate release on a defendant's behalf.[17]  However, this policy statement has not been updated to account for the changes to § 3582(c)(1)(A) enacted through the FSA and is thus "now clearly outdated."[18]  The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A).  The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director, which is clearly no longer the case.  As this Court has previously determined, in accordance with the weight of authority, the Court is not limited to circumstances (A) through (C), and it may exercise its own discretion to determine whether other extraordinary and compelling reasons warrant relief under the statute.[19]  Although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes.

### III.   Discussion

####    A.   Exhaustion

Martin has satisfied the exhaustion requirement described in § 3582(c).  Martin submitted a written form to the Warden at FCI Texarkana on April 27, 2020 requesting compassionate release.  To date, Martin has not received any response from the Warden.  Thus, because more than thirty days have passed, this Court has jurisdiction to decide Martin's motion.[20]

---

[17] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[18] *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).

[19] *United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *3 (D. Kan. July 13, 2020); *United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3 (D. Kan. June 15, 2020); *see also United States v. Younger*, No. 16-40012-02-DDC, 2020 WL 3429490, at *5 (D. Kan. June 23, 2020); *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2–3 (D. Kan. Mar. 11, 2020); *United States v. O'Bryan*, No. 96-10076-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6 (W.D. Pa. May 29, 2020) (quoting *Rodriguez*, 2020 WL 1627331, at *3–4) (collecting cases).

[20] *See United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (holding that if a criminal defendant fails to meet the First Step Act's exhaustion requirement, the Court lacks jurisdiction over the motion).

B.     **Extraordinary and Compelling Circumstances**

Martin argues that the existing COVID-19 pandemic and his medical history constitute an extraordinary, compelling reason to grant compassionate release. Although Martin notes there are few, if any, cases of COVID-19 at FCI Texarkana, he states that if the virus reaches the inmate population, it will spread rapidly and place him at risk.

With respect to motions brought during the current pandemic, "[c]ourts around the country have granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19."[21] The Court is mindful that while "the mere presence of COVID-19 in a particular prison cannot justify compassionate release,"[22] "[m]ost, though not all, of the cases where compassionate release has been granted also involv[e] some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated."[23] By contrast, courts often deny compassionate release motions "where prisoners articulate only generalized or speculative fear about the risk of infection, without any showing of serious medical vulnerability or uncontrolled exposure risk in the prison where they are held."[24]

---

[21] *Somerville*, 2020 WL 2781585, at *7 (collecting cases).

[22] *United States v. Seymon*, No. 11-10040, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020).

[23] *Somerville*, 2020 WL 2781585, at *7; *see also United States v. Gorai*, No. 2:18-CR-220 JCM, 2020 WL 1975372, at *2 (D. Nev. Apr. 24, 2020) ("To make matters worse, defendant notes that '[o]n April 16, 2020, the count at Lompoc USP, now leading the BOP in inflicted inmates and staff, had 69 inmates and 22 staff testing positive.' Even those numbers may be underrepresentative because only inmates with symptoms are tested."); *United States v. Cassidy*, No. 17-CR-116S, 2020 WL 2465078, at *7 (W.D.N.Y. May 13, 2020) ("Here, however, [the defendant] demonstrates more than just a general possibility that he could contract COVID-19. [. . . ] He demonstrates incarceration in a proven 'hotbed' facility that has numerous positive cases, including inmates with whom [the defendant] has shared quarters.").

[24] *Somerville*, 2020 WL 2781585, at *8 (citing *United States v. Canada*, No. 119-014, 2020 WL 2449344, at *1 (S.D. Ga. May 12, 2020)); *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020); *United States v. Gagne*, ---F. Supp. 3d.---, 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020)).

In this case, Martin is housed at a facility that has not yet experienced a confirmed outbreak of COVID-19. Although there are two confirmed cases among inmates at FCI Texarkana, nothing submitted by Martin nor uncovered by the Court indicates that the facility is failing to take the necessary steps to mitigate the spread of the virus.

Notwithstanding the relatively small number of COVID-19 cases at FCI Texarkana, Martin argues his medical conditions create a heightened risk for severe complications if he were to contract COVID-19 including being born with a collapsed lung and a family history of hypertrophic obstructive cardiomyopathy. Martin is a thirty-four-year-old white male, whose age and ethnicity do not place him at a higher risk for experiencing severe complications if he were to contract COVID-19. For instance, data gathered by the CDC shows that individuals between 50 and 64 years old are hospitalized at a much higher rate than that of younger adults, and that eight out of ten COVID-19 deaths in the United States have been in adults 65 years old and older.[25] The statistics show a much lower rate of hospitalization and death among individuals in Martin's age cohort.[26] The latest statistics from the CDC also indicate that non-Hispanic white persons, such as Martin, have one of the lowest rates of infection compared to other racial or ethnic groups.[27] Thus, Martin's age and ethnicity do not place him at a heightened risk of severe complications from COVID-19.

Regarding Martin's collapsed lung at birth, the CDC has not concluded that this renders an individual particularly vulnerable to severe illness stemming from COVID-19. Although the

---

[25]CDC, *COVIDView*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last accessed August 4, 2020).

[26]*Id.*

[27]CDC, *Corona Virus Disease 2019 (COVID-19): Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last accessed August 4, 2020).

CDC recognizes certain respiratory conditions such as COPD, cystic fibrosis, and severe asthma put an individual at heightened risk, Martin does not specify that he has any of these chronic respiratory ailments. His general assertion that he has respiratory issues stemming from a collapsed lung at birth—from which he appears to have recovered—does not clearly place him at risk for severe illness if he contracts COVID-19.

Martin also relies on a family history of hypertrophic obstructive cardiomyopathy, a genetic disorder of the heart muscle.[28] He states that both of his biological parents have this condition, and Martin has been encouraged to be tested for the presence of the gene that causes the disease. Martin has not yet been genetically tested, though he has plans to receive the test upon his release from the BOP. Though the Court acknowledges Martin may have this cardiovascular disease, he has not yet been genetically tested for it; and Martin does not cite any cardiovascular symptoms or conditions he has experienced in the past that would indicate he has a cardiovascular medical condition. Martin's reliance on the mere possibility of having hypertrophic obstructive cardiomyopathy is insufficient to meet his burden demonstrating he has a medical condition placing him at increased risk if he were to contract COVID-19. Accordingly, the Court finds extraordinary and compelling reasons do not exist to warrant a sentence reduction under § 3582(c)(1)(A) based on Martin's medical conditions.

      C.      **Section 3553(a) Factors**

The Court's conclusion is augmented by a consideration of the applicable § 3553(a) factors. Without question, it is regrettable that Martin is incarcerated in a BOP facility at a time when the COVID-19 pandemic is rampant nationwide. The Court is not convinced, however,

---

[28] Rick A. Nishimura, Hubert Seggewiss, & Hartzell V. Schaff, *Hypertrophic Obstructive Cardiomyopathy*, 121 CIRCULATION RESEARCH 7 (2017), available at https://doi.org/10.1161/CIRCRESAHA.116.309348.

that the conditions he finds himself in qualify him for release after serving less than one-half of his sentence. The Court must still consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants.[29]

Application of the § 3553(a) factors here militates against reducing Martin's sentence to time-served. Martin pleaded guilty to a serious felony offense involving the receipt and distribution of child pornography. Though this was Martin's first felony offense, the offense conduct was serious; it involved multiple prepubescent minors, depictions of violence against minors, and approximately 1560 images of child pornography and 202 video files.[30] When the Court sentenced Martin, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary."[31] Martin received a sufficient but judicious sentence of two concurrent terms of 97 months' imprisonment—reducing that sentence by more than one-half would produce a sentence that no longer reflects the seriousness of Martin's criminal conduct, nor furnish adequate deterrence to criminal conduct or provide just punishment. Finally, reducing Martin's sentence to the approximately 38 months he has served would reduce it well below both the Rule 11(c)(1)(C) plea agreement's 97-month term of imprisonment and the applicable Guidelines range of 151 to 188 months.[32] No new fact justifies such a substantial

---

[29] *See* 18 U.S.C. § 3553(a)(1)-(6).

[30] Doc. 41 ¶¶ 33–37.

[31] 18 U.S.C. § 3553(a).

[32] Doc. 41 ¶ 86.

disparity.  The pertinent sentencing factors in § 3553(a) do not favor the reduction Martin seeks and his motion is therefore denied.[33]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Noah T. Martin's Motion for Compassionate Release and to Reduce Sentence (Doc. 55) is **denied**.

**IT IS SO ORDERED.**

Dated: August 5, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[33]*See United States v. Pawlowski*, ---F. App'x---, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020) (holding district court did not abuse its discretion denying motion for compassionate release based on the amount of time remaining to be served; decision not to reduce defendant's sentence from 15 years to less than two years was not unreasonable after consideration of several of the § 3553(a) factors) (citing cases).